FILED
MAR 3 1 2005
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

ANTHONY R. HUGHES,        )
                          )
         Petitioner,      )
                          )
    v.                    )    Case No. 05-1103
                          )
R.V. VEACH,               )
                          )
         Respondent.      )

---

**PETITION FOR WRIT OF HABEAS CORPUS; and
MEMORANDUM OF POINTS AND AUTHORITIES**

---

Federal prisoner, Anthony R. Hughes, appearing pro se, petitions this Honorable Court for writ of habeas corpus as his confinement in this federal district is in violation of the laws of the United States. In this cause, respondent is named as R.V. Veach, the warden at the federal institution at which Hughes is presently confined, pursuant to 28 U.S.C. § 2241(c)(3).

The instant petition is based upon the Memorandum of Points and Authorities submitted herewith. As argued in detail, the savings clause of 28 U.S.C. § 2255 allows this Court to entertain jurisdiction of this habeas proceeding if Hughes demonstrates that section 2255 is "inadequate or ineffective" to test the legality of Hughes' present confinement. See infra. at 8-11.

Hughes swears to each averment advanced thoughout this petition and supporting memorandum under the penalty of perjury.

Dated: March 16, 2005

                                              Respectfully submits,

                                              *Anthony R. Hughes*
                                              Anthony R. Hughes
                                              Reg. No. 04549-089
                                              FCI Pekin
                                              Post Office Box 5000
                                              Pekin, Illinois 61555-5000

                                              Appearing Pro Se

**MEMORANDUM OF POINTS AND AUTHORITIES**

Historically, the writ of habeas corpus has been available for prisoners who wish to challenge their confinement as being in violation of the laws of the United States. Typically, a federal prisoner (like Hughes) would properly pursue relief at the district court where sentencing took place. But in the rare case a federal prisoner might find the typical mechanism to be "inadequate or ineffective" to challenge the lawfulness of his detention. This is one of those rare cases; section 2255 is inadequate and ineffective for Hughes to challenge his confinement which is in plain violation of 18 U.S.C. § 3553(a), insofar as the Court that sentenced Hughes failed to consider the sentencing factors enumerated therein. Instead, the Court relied exclusively upon the federal sentencing guidelines--a practice the Supreme Court recently condemned in <u>United States v. Booker</u>, 2005 WL 50108 (Jan. 12, 2005).

FACTS AND PROCEDURAL HISTORY

In this case, Hughes was indicted in the Eastern District of Wisconsin and charged with three counts of bank robbery in violation of 18 U.S.C. § 2113(a). A jury convicted Hughes of all three counts on May 8, 1996.

The district court held sentencing on September 13, 1996. In determining the proper sentence to be imposed upon Hughes, the court considered <u>only</u> the Guidelines. Based exclusively on the fact that the Guidelines qualified Hughes as a career criminal, the court imposed a sentence of twenty years without taking into considering a host of the factors listed under section 3553(a).

3

The Seventh Circuit affirmed Hughes conviction and sentence on February 4, 1998.

Hughes filed a timely section 2255 which the court summarily dismissed. No court agreed to issue certificate of appealability. This initial collateral attack was followed by a string of other attacks that were for naught. Essentially Hughes' collateral claims have focused on the legality of the imposition of the sentence under the Guidelines' career criminal provision.

## JURISDICTION

As argued below, this Court has jurisdiction over this original habeas proceeding. Unlike many other federal prisoners who seek such relief, Hughes makes a successful demonstration of the inadequacy of section 2255 thus separating Hughes from the prisoners simply seeking to avoid the gatekeeping requirements enacted by Congress.

## ARGUMENT

### 1. The Substantive Decision in Booker is Retroactive

Because Hughes appears before the Court on an original collateral attack, the Court "must determine, as a threshold matter, whether granting him the relief he seeks would create a new rule" subject to the general rule of retroactive bar. Penry v. Lynaugh, 492 U.S. 302, 313 (1989)(quotations omitted). This threshold inquiry is conducted without any regard to the criteria set forth by the Supreme Court in Tyler v. Cain, 533 U.S. 656 (2001)(holding that section 2244 governing application for a successive habeas petition requires petitioners to demonstrate that the Supreme

4

Court itself has "declared" the new rule retroactive to cases on collateral review). This is so since Hughes is spared from the gatekeeping requirements of the Antiterrorism Effective Death Penalty Act of 1996 by his successful showing of eligibility of review under the "savings clause" of 28 U.S.C. § 2255.

When faced with an argument in favor of applying a new Supreme Court decision retroactively, under Teague v. Lane, 489 U.S. 288 (1989), this Court should consider as a threshold inquiry whether the rule Hughes seeks to apply is a substantive or procedural rule. This is the appropriate starting point given the fundamental principle that "Teague by its own terms only applies to procedural rules." Bousley v. United States, 523 U.S. 614, 620 (1998). "[R]ules that regulate only the manner of determining the defendant's culpability are procedural." Schriro v. Summerlin, 124 S.Ct. 2519, 2523 (2004)(emphasis in original). Decisions of "substantive criminal law," by contrast, are those that reach beyond issues of procedural function and address the meaning, scope, and application of criminal statutes. See Bousley, supra. In other words, a new rule is one of procedure of it impacts the operation of the criminal trial process, a new rule is one of substance if it alters the scope or modifies the applicability of a federal statute.

The Supreme Court has recognized that the line separating procedure and substance is not always a bright one. See Robinson v. Neil, 409 U.S. 505, 509 (1973)("[W]e would not suggest that the distinction we draw is an ironclad one that will invariably result in the easy classification of cases in one category or the other."); see also United States v. Woods, 986 F.2d 669, 677-78 (3rd Cir.1993)

5

Booker is one such rule. There, the Court undertook the task of answering two questions: "Whether our Apprendi line of cases applies to the [federal] Sentencing Guidelines, and if so what portions of the Guidelines remain in effect." Booker, supra. The Court's affirmative answer to the first question without more may have set Booker in the procedural category. See id. ("we hold ... that the Sixth Amendment as construed in Blakely does apply to the Sentencing Guidelines"). But of course the Court did not end there.

"[I]n light of this holding," the Court proceeded to the second question in a separate opinion, "two provisions of the Sentencing Reform Act of 1984 (SRA) that have the effect of making the Guidelines mandatory must be invalidated ...." Id. Along the way to coming to the second, remedial holding, the Court observed the existence of the Guidelines as being less problematic as statutory law, such as 18 U.S.C. § 3553(b) which "makes the Guidelines effectively mandatory," in that a district court (such as the one which sentenced Hughes) must follow its dictates. In spite of clear legislative intent and efforts culminating in a statutory-mandated Guidelines, the Court changed the entire shape of sentencing legislation because "given today's constitutional holding, that is not a choice that remains open." Id.

Thus concluding that "the constitutional jury trial requirement is not compatible with the [Federal Sentencing] Act," the Court held, "some severance and excision are necessary." Id. Since "the existence of § 3553(b)(1) is a necessary condition of the constitutional violation in the case before the Court, it was

6

excised and severed from the remainder of section 3553. "So modified, the Federal Sentencing Act, see Sent. Reform Act of 1984, as amended, 18 U.S.C. § 3553 et seg., 28 U.S.C. § 991 et seq., makes the Guidelines effectively advisory." Id.

In the wake of Booker, the courts of appeals are applying this new decision to all cases on direct appeal, as opposed to only those presenting constitutional violations. For example, the Fourth Circuit has concluded:

> Booker wrought a major change in how federal sentencing is to be conducted. As the law now stands, sentencing courts are no longer bound by the ranges prescribed by the guidelines.

United States v. Hughes, No. 03-4172 (4th Cir. Jan. 24, 2005). Such treatment of Booker is illustrative of the substantive nature of this decision, in spite of any semblance to that of a procedural rule.

The Supreme Court's decision in Booker is thus a change in substantive law that is automatically retroactive to cases on collateral review. While a new interpretation of a federal statute has been held by the Supreme Court has always having retroactive application, see Bousley, supra., much more can be said of a new rule (like Booker) that invalidates and removes a federal statute based on constitutional principles. To be sure, this distinction gives greater weight to an argument against the applicability of a retroactivity analysis altogeth, drawing support from the rationale that the law was void all along. See, e.g., United States v. Johnson, 457 U.S. 550 (1981)(citing Moore v. Illinois, 408 U.S. 786, 800 (1972) and Ashe v. Swenson, 397 U.S. 436, 437 n. 1 (1970)).

7

Even in the absence of an actual invalidation of a statute, new statutory interpretation cannot be considered as a "new statutory rule," the Seventh Circuit has held, as it is incoherent since it "would indicate that a federal statute duly enacted by Congress could mean one thing prior to the Supreme Court's interpretation and something entirely different afterwards." Brough v. United States, 454 F.2d 370, 372-73 (7th Cir.1971).

That the Seventh Circuit has decided against retroactivity of Booker in McReynolds v. United States, No. 04-2520 (7th Cir. Feb. 2, 2005), is inapposite. There, the Court considered the constitutional holding of Booker while the defendant was challenging sentencing enhancements, whereas Hughes relies upon the second holding of Booker.

Accordingly, Hughes is entitled to raise his instant challenge based on the substantive change in law wrought by Booker.

2. Savings Clause is Available to Hughes

Although sparingly used, the savings clause of section 2255 is a viable vehicle for some federal prisoners to challenge their confinement. United States v. Prevatte, 300 F.3d 792, 798 (7th Cir.2002). The Seventh Circuit has therefore "stressed ... that a district court presented with a petition for writ of habeas corpus under § 2241 should analyze that petition on its own terms, without assuming that whatever cannot proceed under § 2255 also cannot proceed under § 2241." Gray-Bey v. United States, 209 F.3d 986, 990 (7th Cir.2000).

For a federal prisoner such as Hughes who has already filed a

8

section 2255 motion which was denied on the merits, prior to proceeding to the district court on another section 2255 motion, he must received authorization from the court of appeals. 28 U.S.C. § 2244(b)(3)(A). This "gatekeeping requirement" was legislated by Congress with the Antiterrorism Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA explicitly prohibits a prisoner from receiving authorization to present a claim that was litigated in a previous collateral attack. 28 U.S.C. § 2244(b)(1)("A claim presented in a second or successive habeas corpus application ... that was presented in a prior application shall be dismissed").

The "new claim," moreover, must fall within one of two stringent categories, which must be based on either:

> (1)  newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty; or
>
> (2)  a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255 ¶ 8.

> However, section 2255 also provides:
>
> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by a motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is <u>inadequate or ineffective</u> to test the legality of his detention.

28 U.S.C. § 2255 ¶ 5(emphasis added).

The Seventh Circuit has interpreted this provision of section

9

2255, which has been coined the "savings clause," as a viable mechanism available for federal prisoners able to meet the "inadequate or ineffective" exception. See Garza v. Lappin, 253 F.3d 918, 921 (7th Cir.2001)(quoting 28 U.S.C. § 2255).

"[A] procedure for post-conviction relief can fairly be termed inadequate when it is so configured as to deny a convicted defendant any opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense." In re Davenport, 147 F.3d 605, 611 (7th Cir.1998). Or, "[a] federal prisoner should be permitted to seek habeas corpus [under section 2241] only if he had not reasonable opportunity to obtained earlied judicial correction of a fundamental defect in his conviction or sentence because the law changed after his first 2255 motion." Id. (emphasis added).

Davenport added three qualifications for employment of the savings clause. "The first is that the change of law has to have been retroactive by the Supreme Court." Id. at 611-12. "The second is that it must be a change that eludes the permission in section 2255 for successive motions; if it does not, if therefore the prisoner is not barred from filing a successive such motion, then his 2255 remedy is not inadequate and he cannot apply for habeas corpus." Id. Finally, "[t]hird, 'change in law' is not to be equated to a difference between the law in the circuit in which the prisoner was sentenced and the law in the circuit in which he is incarcerated." Id.

As argued above, the substantive aspect of Booker is undoubtably retroactively applicable to Hughes. The Seventh Circuit has

10

In <u>United States v. West</u>, 2005 WL 180930 (S.D.N.Y. Jan. 27, 2005), the district court observed that <u>Booker</u> evokes such a change in federal sentencing that "the sentencing court is required to consider a host of individual variables and characteristics excluded from those calculations called for by the Guidelines."

But in the instant case, the district court did not consider these the "individual variables and characteristics" of section 3553(a).

Hughes, therefore, is entitled to sentencing anew under the present sentencing scheme.

/  /  /
/  /  /

## PRAYER FOR RELIEF

By reason of the foregoing, Hughes prays this Court grant the instant petition, allowing Hughes to be sentenced anew under the substantive change wrought by <u>Booker</u>.

I declare under the penalty of perjury that the foregoing it true and correct.

Dated: March 16, 2005

Respectfully submitted,

*Anthony R. Hughes*
Anthony R. Hughes
Reg. No. 04549-089
FCI Pekin
Post Office Box 5000
Pekin, Illinois 61555-5000

Appearing Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of March, 2005, I delivered a true and correct copy of the herein and foregoing PETITION FOR WRIT OF HABEAS CORPUS by mailing the same to the United States Attorney for the Central District of Illinois, 100 N.E. Monroe, Peoria, Illinois 61602, via U.S. Postal Service, first-class postage fully prepaid.

_____
Anthony R. Hughes